## RAWDON vs. RAWDON.

[BILL IN EQUITY FOR DIVORCE ON GROUND OF INSANITY.]

1. *Insanity or lunacy avoids marriage.*—A valid marriage cannot be contracted by an insane person, nor by a lunatic except during a lucid interval, since he cannot consent to any contract; but mere weakness of mind, unless it amounts to derangement, is not sufficient to avoid the marriage.
2. *Burthen of proving insanity or lunacy.*—The party who alleges insanity or lunacy, in avoidance of a contract, must prove it; but, when the existence of lunacy is once established, it devolves on the opposite party to prove, by testimony equally convincing, that the contract was made during a lucid interval.
3. *Decree of divorce on account of insanity unnecessary yet proper.*—If a marriage is void by reason of the insanity of either one of the contracting parties, no decree of divorce is necessary to restore the parties to their original rights; yet a decree of divorce, in such case, is conducive to good order and decorum, and to the peace and conscience of the party seeking it.
4. *Lapse of time bars relief.*—The lapse of twenty-two years after the discovery of the alleged insanity, before filing bill to avoid marriage on that ground, is a bar to the relief sought.

APPEAL from the Chancery Court of Talladega.

Heard before the Hon. A. J. WALKER.

This bill was filed by Mrs. Elizabeth Rawdon, the appellant, by her next friend, asking a divorce from her husband, Isaac Rawdon, on account of his alleged insanity at the time their marriage was contracted. Its material allegations were, that the parties were married, in 1826, in South Carolina; that said Isaac Rawdon was insane at the time said marriage was celebrated, but this fact was then, and for several years afterwards, unknown to complainant; that his insanity was the effect of a severe attack of brain-fever; that at the time of the marriage, and for some time previous thereto, he apparently enjoyed a lucid interval; that after the marriage complainant noticed many strange things in his conduct, though he was generally an intelligent and sensible man; that about six years after the marriage he suddenly became greatly concerned about the subject of religion, and gave such indubitable proofs of insanity that complainant became satisfied that his mind was permanently deranged; that his attacks have since become more frequent and violent, until his lucid intervals have entirely ceased; that during his paroxysms of insanity he evinced a disposition to shed blood, and complainant was several times compelled to interfere, to prevent him from killing some of the negroes; that he killed their only child, by cutting its throat with a knife, and then erected a scaffold and burned the body,—saying, 'that he offered his son a sacrifice to God, as Abraham had offered his son Isaac;' and that he has since been confined in a lunatic asylum at Milledgeville, Georgia.

Publication was made against the defendant as a non-resident, and a guardian *ad litem* was appointed, who filed a formal answer, denying the allegations of the bill, and demanding full proof.

The testimony establishes the main allegations of the bill.

On final hearing, the chancellor dismissed the bill, on the ground that the marriage was shown by the evidence to have been contracted during a lucid interval; and his decree is now assigned as error.

MORGAN & MARTIN, for the appellant.

STONE, J.—The rule is well settled, on both sides of the Atlantic, that no contract is of any validity whatever, if

Rawdon v. Rawdon.

either of the contracting parties be of *unsound mind*. Such contract is wanting in the essential element—the *concurring assent of two minds;* and hence the law pronounces it absolutely void. This rule is alike applicable to the marriage contract.—Bishop on Marriage and Divorce, § 177; Bright on Husband and Wife, vol. 1, p. 2.

There is some diversity in the opinions of jurists, as to the degree of mental imbecility necessary to avoid the contract; but all agree, that it is *unsoundness*, and not mere *weakness* of mind, unless that weakness be so considerable as to amount to derangement.—Bishop on M. and D. § 178; Wightman v. Wightman, 4 John. Ch. 343. The faculties of a sound mind are links, composing a chain. These links may be worn and weakened, and still the chain exists. Break or destroy one of them, and the unity and continuity are gone.

The doctrine is also well settled, that lunacy of one of the parties will avoid a marriage contract; (Bish. on M. and D. § 187; Crump v. Morgan, 3 Ired. Eq. 91, and cases cited;) but it is equally well settled, that this, like other contracts, if made during a lucid interval, will be upheld.—Bishop on M. and D. § 180; Crump v. Morgan, *supra*. In such cases, there is the *concurring assent* of two minds; and this is the test. To this contract, the general rules, of law are applicable; viz., that the party who sets up insanity or lunacy must prove it; and having once established the existence of lunacy, the *onus* is cast on the other party, to prove by testimony equally convincing, that the particular contract was entered into during a lucid interval.—Browning v. Kean, 2 Phill. 69; Bishop on M. and D. § 184.

The authorities are also equally clear, that if a marriage contract be void, by reason of the insanity of one of the parties, the legal sequence is, that no decree of divorce is necessary to restore the parties to their original rights.— *Ex parte* Turney, 1 Ves. & Beames, 140. Yet we cordially approve the sentiment of the distinguished chancellor of New York, that " the fitness and propriety of a judicial decision, pronouncing the nullity of such a marriage, is very apparent, and is equally conducive to good order and decorum, and to the peace and conscience of the party."—Wightman v. Wightman, *supra;* Crump v. Morgan, *supra*, where most of the authorities are ably collated.

Applying these rules to the case before us : The proof establishes the proposition, that in 1822 or '23, Mr. Rawdon, after his recovery from a fever, was left with his reason dethroned. Improvement and apparent recovery soon supervened ; and in 1826, he intermarried with the complainant. For some time before, at the time of the marriage, and for six years afterwards, no fact or circumstance is brought to our knowledge, from which we can infer the slightest mental alienation. Insane impulses, and monomania, again developed themselves,—and the bloody tragedy recorded in the testimony fills the appalling picture. At the time of the marriage, was he incapable of understanding the nature of the contract he was entering into ? Was he incapable of taking care of himself and his property ? It may be the case, that the testimony of Mr. Rawdon's recovery before the marriage is not fully satisfactory. His subsequent relapse strengthens the inference that the malady was not entirely healed. Do these justify us in visiting on these parties the consequences which must result from declaring the marriage void ? In this case, there is no living offspring to suffer by the sentence ; but the rule, if we adopt it, may, in some future proceeding, illegitimate a household. We need not now solve this vexed problem.—See Parker v. Parker, 2 Lee, (Eng. Eccl. Rep.) 382.

These parties were married in 1826. Six years afterwards, in 1832, Mrs. Rawdon had notice that Mr. Rawdon was insane. She slumbered on her known rights twenty-two years, and filed this bill in 1854. Courts of equity, for the peace of society, discourage antiquated and stale demands ; and acting on this inherent doctrine, refuse to interfere where there has been long acquiescence.—Story's Equity, §§ 1520, 1520 a, 1521, and notes. Again, courts of equity act on the analogies of the limitations governing actions at law. If this marriage be void, the marital rights of Mr. Rawdon never attached to the property in possession of Mrs. Rawdon. If, in a proper case, suit be brought to recover personalty, the limitation is six years ; if realty, ten years. Lapse of time is a bar to relief in this case ; and the parties, as to the property, must be left to their remedies at law, if they have any.

The decree of the chancellor is affirmed.