Yorston *v.* Yorston.

ELIZA C. YORSTON

*v.*

CHARLES H. YORSTON.

In May, 1870, a husband was divorced from his wife by the decree of a court of competent jurisdiction of the state of Illinois. The cer-tificate of that decree states that the wife was duly served with process. The wife now denies (in her testimony) that she received the notice of the suit, which was sent to her address, but she does not attack the *bona fides* or validity of the decree. In December, 1871, the husband married again, and has now living two children, the issue of the last marriage. Before his divorce, he gave to the first wife a house in this state, and ever since then has voluntarily provided for her and her children. In January, 1878, he dismissed two of her sons from his employ, and she admits that, apprehending that he was about to cease supporting her and her children, she filed a bill for divorce, alleging adultery with his second wife.—*Held*, that the divorce must be denied, on the ground of acquiescence and connivance.

Bill for divorce, custody of children and alimony.

NOTE.—The following cases show what delay or connivance, either alone or in connection with other circumstances, has been held to affect the petitioner's right to a divorce:

In *Morton* v. *Seton*, *3 Phillim. 147*, a man, forty-five years of age, who alleged a marriage seven years before, was not allowed to set up his own impotence.

In *Briggs* v. *Morgan*, *3 Phillim. 325*, a delay of sixteen months after marriage was deemed fatal to the application of a man, on account of his wife's malformation.

In *Pollard* v. *Wybourn*, *1 Hagg. 725*, the marriage was celebrated in 1815, and the parties lived together, but not continuously, as he was in the army, until 1826, when a divorce, on the ground of the hus-band's impotence, was decreed.

In *Mortimer* v. *Mortimer*, *2 Hagg. 310*, a wife, in 1811, supposing her-self to be *in articulo mortis*, confessed to her husband and his sister that she had committed adultery in 1807; she afterwards recovered and was separated from her husband, living with her father, on an allow-ance made by her husband. In a suit brought in 1816 by the wife, for a restoration of her conjugal rights, the husband pleaded her confes-sion, and that he had delayed a suit against her for a divorce because he had no evidence of her adultery, other than such confessions,— *Held*, that they were admissible in evidence, although she had after-wards retracted them.

Yorston *v.* Yorston.

*Mr. I. S. Taylor*, for complainant.

*Mr. Woodbridge Strong*, for defendant.

THE CHANCELLOR.

The parties to this suit were married in England, in 1844. They lived together there until August, 1863, when they came to this country. After their arrival they resided in the city of Brooklyn until April, 1865, when they removed to what was then Bergen, but now part of Jersey City, in this state, where they lived together until in or about November, 1868, when the defendant left the complainant and returned to England. He never lived with her again. She continued to live in Jersey City until the spring of 1870, when she removed to Riverton, in this state. She lived there for about a year—that is, until 1871—when she removed to Detroit, where she has ever since resided.

In *Guest* v. *Shepler*, *2 Hagg. 321*, a delay of seven years defeated a husband's petition for divorce, on account of malformation in his wife.

In *B.* v. *B.*, *2 Robertson 580, 28 Eng. L. & Eq. 95*, a delay of five years, the husband having resided a considerable part of the time in India, was held not alone fatal to his suit, founded on his wife's malformation.

In *Anonymous*, *Deane & Sw. 295*, a delay from 1840 to 1855, on the husband's part, in a suit founded on his wife's malformation, was, *inter alia*, held explainable by his statement that he had been professionally informed that it was not incurable.

In *Heavisides' Case*, *12 Cl. & Fin. 333*, a husband's delay of five years was deemed excusable, by reason of his wife's elopement, adultery and absence in another country, and his own affliction therefrom and consequent inability to attend to business. *See, especially, a collection of many cases in a note to this one.*

In *Brooks's Case*, *1 H. of L. Cas. 159*, a lapse of eight years from the discovery of a wife's adultery until the filing of her husband's petition, was considered sufficiently accounted for by his poverty.

In *Matthews* v. *Matthews*, *1 Sw. & Trist. 499*, A. was married in 1844, and lived with her husband until 1853, when a deed of separation, reciting mutual differences &c., was executed, and cohabitation ceased. Her petition, filed in 1856, for a judicial separation, on the ground of cruelty, was dismissed, because of the lapse of time and deed of separation.

In *Pellew* v. *Pellew*, *1 Sw. & Trist. 553*, the marriage took place in 1851, and the parties lived together until 1853, when the husband was ordered to China, in the service. He returned in 1854, but in October of that year his wife eloped. In December, 1854, he obtained a divorce

The defendant returned to this country, from England, in 1868, and, in May, 1870, he was divorced from her by the decree of a court of competent jurisdiction of the state of Illinois, and, on the 29th of December, 1871, he was married, at his house, in the county of Middlesex, in this state, to Mary Lewis, with whom he has ever since resided there, and by whom he has had, since his marriage with her, three children, two of which are still living. Shortly before he applied for the divorce, he bought and caused to be conveyed to the complainant, a house and lot of land in Bergen, free from encumbrance, which she still owns, but the title to which she, since the commencement of this suit, conveyed to one of her sons, in trust for her. Ever since he left the complainant, the defendant has provided for her and her minor children the means of support, and she admits that it was only because, in January, 1878, he ceased to employ two of her sons in his business, and she under-

---

*a mensa,* and steps were afterwards taken to obtain a divorce bill in parliament, but were discontinued because the husband was abroad, and no suit for crim. con. could be brought.—*Held,* that a suit in 1859 was not too late, under the "unreasonable delay" clause of the English statute.

In *Tollemache* v. *Tollemache, 1 Sw. & Trist. 557,* an Englishman's petition averred a marriage with a Scotch woman at Gretna Green, August 6th, 1837, and also in England, August 12th, 1837, followed by cohabitation and issue, until April, 1841, when the adultery of the wife in Glasgow and Edinburgh was alleged, followed by the wife's marriage with one J. P., at Glasgow, in July, 1841, with whom she lived until his death, in June, 1855. The petition further alleged adultery with the said J. P., and a Scotch divorce between the petitioner and his wife in July, 1841.—*Held,* that petitioner's belief, founded on professional advice, that the Scotch divorce was valid everywhere, excused his delay until 1855, when he was informed otherwise and instituted this suit.

In *H.* v. *C., 1 Sw. & Trist. 605,* a delay of the wife from 1834 to 1858, the parties having been separated since 1838, although she had importuned her husband to receive her again, was deemed fatal to her suit for divorce, on account of his impotence.

In *Thomas* v. *Thomas, 2 Sw. & Trist. 113,* a husband and wife executed a deed of separation in 1854, which recited, among other things, that the husband had for some months been living with a Miss H., with a reference to articles of agreement as to certain property to which all three had been parties. A suit brought by the wife in 1860, for judicial separation, on the ground of the husband's adultery with Miss H. in 1859–60, was dismissed, because her executing the deed of separation

Yorston *v.* Yorston.

stood that he was about to cease to provide support for her and her minor children, that she began this suit, the bill in which was filed June 22d, 1878. The bill charges the defendant with having committed adultery with Mary Lewis, in Middlesex county, on different days in the years from 1871 to 1878, both inclusive.

It is clear, from the proof, that the complainant has known, from the time of the marriage of the defendant to Mary Lewis, of the fact that he claimed to have been lawfully divorced from her, and to have been lawfully married to Mary Lewis, and she has known, also, that he has been living with Mary Lewis, accordingly, as his wife, and that Mary Lewis has had children of that marriage by him. Three of the children of the complainant and defendant visited their father at his house, after his marriage to Mary Lewis, and he treated her as his lawful wife and appear to have considered her such. One of them was their daughter Emily (Mrs. Campbell), who was married in April, 1872, and another was William, who

---

was virtually a consent to a continuance of such cohabitation, citing *Barker* v. *Barker, 2 Addams 285.*

In *Matthews* v. *Matthews, 3 Sw. & Trist. 161,* lapse of time (seven years) and a deed of separation on account of the husband's drunkenness and cruelty, were held good grounds to dismiss a petition for divorce sought because of such cruelty.

In *E.* v. *T., 3 Sw. & Trist. 312,* a husband's delay of eleven years was accounted for by his wife's delicate health and condition, consequent on a surgical operation for malformation, which was not successful.

In *Boulting* v. *Boulting, 3 Sw. & Trist. 329,* A. married B. in 1833, and separated from him in 1835 under a separation deed, B. allowing her a certain sum. In 1842 B. commenced an adulterous cohabitation with C., which continued until the time of the trial, and A. was aware of it from 1843. Her petition in 1863 was dismissed for delay and connivance.

In *Smallwood* v. *Smallwood. 2 Sw. & Trist. 397,* lapse of time between 1848 and 1861 was not considered, *in itself,* as defeating an application for a divorce on account of cruelty in 1848.

In *Harrison* v. *Harrison, 3 Sw. & Trist. 362,* a wife, in 1844, left her husband, who had been guilty of cruelty and adultery; no subsequent act of adultery was proved. Until 1862 the wife had been without means to sue for a divorce.—*Held,* that her delay was not unreasonable.

In *M.* v. *B., 3 Sw. & Trist. 550,* M. married B. in 1853, and occupied the same bed with him until 1855, when she took another room, at his request, and left his house in 1863. To her petition filed on

Yorston *v.* Yorston.

was past his majority when his father was married to Mary
Lewis.   When he was examined as a witness in this suit
(he was sworn for the complainant), he was twenty-nine
years old.   He says that his mother first expressed her
intention to sue for a divorce about 1870, and again in
1871, and again in 1874, at which time (1874) he says she
learned of the supposed divorce; that he, at his mother's
request, got a lawyer, in Detroit, to write to the abstract
office in Chicago to ascertain whether there was not a
divorce on record, and that his mother was informed that
there was none.   There were two letters of inquiry and two
replies.   He further says that, with these letters, " She was
satisfied to rest her case as long as the defendant continued
to support her and her children in respectable circum-
stances," and that the next time she agitated the matter
was in the spring or summer of 1878.

The complainant says that her daughter, Mrs. Campbell,
in January, 1873, after a visit which she made to her father
in 1872, told her that he claimed to have been divorced

account of B.'s impotence,—*Held*, that the delay and her own state-
ment that she never thought of instituting the suit, except to silence
reports in circulation that she had left B.'s house because she was
insane, were grounds to dismiss it.

In *Castledon* v. *Castledon, 9 H. of L. Cas. 186*, the petitioner was mar-
ried in 1834, and lived with her husband until 1838, when she returned
to her father's house, where, during a surgical operation, the surgeon
found so much difficulty in making an examination, that he asked her
whether her marriage had been consummated, and testified that he
believed she replied that, to the best of her knowledge, it had not.
There was no impotence on her part.   Down to 1854 she desired to
live again with her husband, and then, he still refusing, proceedings
were begun to compel him to support her.   He then made her an
allowance of £80 per annum, which was paid until 1858, when he noti-
fied her that it must be reduced to £45, whereupon her petition was
filed, based on his impotence, and at the hearing was dismissed and
that order affirmed.

In *Ross* v. *Ross, L. R. (1 P. & D.) 734,* the parties were married in
1846, and separated by the ordinary deed in 1866, the wife then charg-
ing her husband with adultery with one M. S., formerly their domestic,
which she had for some time suspected, but which he always denied.—
*Held*, that there was no proof of connivance to defeat her right.

In *Newman* v. *Newman, L. R. (2 P. & D.) 57,* a wife separated from
her husband in 1850, in consequence of his incestuous adultery with
her sister, on which ground she presented her petition in 1868, explain-

33

Yorston *v.* Yorston.

from her and to have subsequently married Mary Lewis, and she adds that she did not believe he was divorced. Her language is: "I, in reply, said (referring to the divorce) it could not be, without my knowledge." She also admits that, afterwards, Mrs. Campbell told her the decree of divorce had been shown to Mr. Campbell, her husband, but she says Mrs. Campbell also said that her husband said it was of no use, that it was illegal. It is impossible not to conclude, from the testimony, that she knew from 1872 that the defendant claimed to have been divorced from her, and that he claimed, also, to have been married to Mary Lewis, and that he was living with her as his lawful wife. And she was satisfied to permit him to live in what she supposed and now insists was open adultery, so long as he continued to support her, and would have still been satisfied that he should continue to do so, if she had not believed that he intended to support her no longer. She is in no situation to claim a divorce on the ground of the adultery of which she complains.

---

ing, as the cause of her delay, that her mother was very anxious to avoid a public exposure of the scandal, and that she yielded to her mother's entreaties and forbore to take proceedings until her mother's death.—*Held*, that although her delay was unreasonable, it was not of such a character as to deprive her of her relief.

In *Wilson* v. *Wilson, L. R.* (*2 P. & D.*) *435*, the adultery was committed in 1866, and the suit instituted in 1871, the petitioner being a material witness on that point. The inadmissibility of his evidence until after August, 1869 (when a general statute making such testimony competent was passed), and his want of means, were held a sufficient explanation of his delay.

In *Short* v. *Short, L. R.* (*3 P. & D.*) *193*, a husband discovered his wife in adultery in September, 1859, and separated from her, but presented no petition until July, 1873, when he admitted that he had about £600 in money and some other property.—*Held*, that want of means was not shown as an excuse for his delay.

In *Cummins* v. *Cummins, 2 McCart. 138*, a wife's delay of nine years in filing her bill, after discovering her husband's adultery, and their subsequent separation, was so explained as not to invalidate her application.

In *Williamson* v. *Williamson, 1 Johns. Ch. 488*, a husband had been absent in a foreign country, and his wife, supposing him to be dead, married again; he afterwards returned, and finding his wife married again, without taking any steps to obtain a divorce, he went abroad and continued absent for twenty years; then he returned and applied

Yorston *v.* Yorston.

In *Ross* v. *Ross, L. R.* (*1 P. & D.*) *734*, the court said: "A question having been raised as to willing consent, I may add that if it were established that the wife consented, as one of the conditions of the grant of the allowance, to the husband's continuing the adulterous intercourse which had been established, such consent would, in my opinion, amount to connivance, even if it were extorted from her by the pressure of the circumstances in which she was placed, unless, of course, the pressure to which she was subjected amounted to that degree of force which would invalidate any agreement. She might be very unwilling to consent, but if, in the end, she withdrew her scruples for the sake of getting an allowance, I think she must be guilty of connivance."

In *Thomas* v. *Thomas, 2 Sw. & Trist. 113*, a wife had threatened proceedings for divorce for adultery, and then entered into a negotiation with her husband, whereby a promise was made for the support of herself and her children, to prevent further proceedings in chancery, where she had taken some

---

for a divorce, which was denied on the ground of delay, although the counsel of both parties consented to a decree.

In *Valleau* v. *Valleau, 6 Paige 207*, the husband, a few months after his marriage, abandoned his wife and left the state, and the wife, after seven years, married again, and her second husband lived about five years thereafter. A suit brought four years afterward for divorce, by the first husband, for his wife's adultery with the second husband, was dismissed.

In *Reese* v. *Reese, 23 Ala. 785*, living with her husband for two years after the cruelty complained of, was held not to estop a wife's right to a divorce therefor.

In *Smedley* v. *Smedley, 30 Ala. 714*, a statute requiring a suit for divorce, on the ground of adultery, to be brought within one year after the discovery of the act charged, was construed not to include acts of *cruelty*, or an application for a divorce on that ground; and a divorce was granted for cruelty beginning nearly six years before and continuing until the bill was filed.

In *Schonwald* v. *Schonwald, Phil. (N. C.) Eq. 215*, the petitioner was married to her husband in 1843, and lived with him until about 1850, when he became so cruel that she was compelled to separate from him and to accept an allowance, in order to retain the custody of her child; and she removed from the state. About 1851 respondent married again, and the petition was filed in 1857.—*Held*, that the fact of petitioner being a non-resident and a pauper, excused her delay.

Yorston v. Yorston.

steps, and in the ecclesiastical court.   Said Cresswell J.: "Is
there any provision in the agreement that her husband is to
cease his adulterous intercourse with the other woman?   It
is impossible to draw any other inference from this deed than
that she was a consenting party to his continuing to live in
a state of adultery."

In the case in hand, the husband sought a divorce, and
claimed to have obtained it, and he soon afterwards married
another woman, and has lived with her ever since as his
wife.   For seven years this intercourse has continued, and
the complainant, believing all that time, as she says, that his
connection with that woman was adulterous, has not only
refrained from approaching him on the subject, but permit-
ted, without protest, as far as appears, her children to visit
him and his new wife, and has also accepted from him a
support for all that time, and it was only when she under-
stood that the support was to be discontinued, that she
made application for a divorce.   The alleged adultery of
which she complains, is all charged to have been committed

In *Whittington* v. *Whittington*, *2 Dev. & Bat. 64*, the parties were mar-
ried in 1823, and the husband abandoned his wife shortly afterwards.
She led a profligate life in the neighborhood of her husband's home
down to 1833, when his bill was filed for adultery.—*Held*, that his
right had been lost by laches.  See, also, *Little* v. *Little*, *63 N. C. 22*.

In *Rawdon* v. *Rawdon*, *28 Ala. 565*, a lapse of twenty-two years after
a wife's discovery of her husband's alleged insanity, was deemed fatal
to her application for a divorce on that ground.

In *Secor* v. *Secor*, *1 McArthur 630*, a divorce, on the ground of the
wife's insanity before her marriage, was refused where more than
thirty years had elapsed since the marriage, children had been born
and matured, and the parties had agreed to live separate.

In *McCafferty* v. *McCafferty*, *8 Blackf. 218*, a statute required that a
divorce should be denied, if the suit should not have been brought
within two years after the party complaining of the adultery discovered
it.—*Held*, that the complainant might prove the offence, although he
had known of its existence more than two years before suit was
brought, and then the defendant might prove the *scienter*, in defence.

In *Cochran* v. *Cochran*, *35 Iowa 477*, the parties were married in 1846,
and lived together until 1858, when a criminal intimacy sprang up
between the husband and an unmarried woman, who often came to
the house.  This continued about three years, with the wife's knowl-
edge and connivance, when he abandoned his family, in 1861, and his
wife obtained a divorce in 1862, therefor, whereupon he married his
paramour in another state, where they resided.  The divorce was

Yorston *v.* Yorston.

with Mary Lewis, and it is all laid in the years in which she held the marriage relation to the defendant. The complainant must, under the circumstances, be held to have consented to it.

Again, the defendant proves the decree of divorce. It appears, on its face, according to the copy, to have been made by a court which is admitted to have been a court of competent jurisdiction, and, though it states that the complainant did not appear to the suit, it states that she was duly served with process. The decree is sufficiently proved for the purposes of this suit. The fact of its existence is sworn to (the record appears to have been destroyed in the Chicago fire), and a certified copy is offered. The clerk of the court certifies, under the seal of the court, that the copy which is offered is a true, perfect and complete copy of a final decree of divorce entered of record on the 5th day of May, 1870, in a cause wherein Charles H. Yorston was complainant, and Eliza Yorston was defendant; and the secretary of state of Illinois certifies, under the great seal of the state, that the

annulled for want of service on him, and another suit instituted.— *Held*, that her knowledge, and having given her husband and his paramour opportunity for intercourse, were no defence.

In *Dutcher* v. *Dutcher, 39 Wis. 651*, the statute required an action for divorce to be brought within three years after the discovery by the plaintiff of the offence charged.—*Held*, that where the plaintiff had knowledge that the defendant was living in open and continuous adultery more than three years before suit was brought, such suit was barred, although the adultery was continued down to the time of beginning the suit.

In *Fellows* v. *Fellows, 8 N. H. 160*, a delay of eight years after the cruelty for which the divorce was sought, was held too long to justify relief, without explanation.

In *Myers* v. *Myers, 41 Barb. 114*, the statute required suits to be brought within five years after the discovery of the offence by the plaintiff; and a rule required him to aver that the adultery charged was without his consent, connivance or privity.—*Held*, that an allegation that five years had not elapsed since he discovered the fact that such adultery had been committed by the defendant, without his consent, connivance or procurement, was insufficient.

In *Peipho* v. *Peipho, 88 Ill. 438*, the complainant sought a divorce thirteen years after his marriage, and after cohabiting nearly eight years with his wife, with full knowledge and without complaint as to her impotency.—*Held*, that mere motives of delicacy were not enough

Yorston *v.* Yorston.

person who signed the first-mentioned certificate was such
duly commissioned and qualified officer, with full power, by
the laws of the state, to sign such certificates, that that cer-
tificate is in due form of law, and by the proper officer, and
that full faith and credit are due to the officer's official
attestations.   It appears that the court has been abolished,
and it does not appear, and is not suggested, that its powers
have been transferred to any other court.   There is, there-
fore, no judge to certify.

The complainant, indeed, denies that she received the
notice of the suit which was sent to her address, but the
*bona fides* or validity of the decree is not put in issue.   The
bill is silent on the subject.   And here it may be remarked
that her testimony by no means satisfactorily establishes
the fact that she received no notice of the proceedings for
divorce.   Had the complainant desired to attack the decree,
she might have done so in her bill as originally filed, or she
might have amended her bill after answer, so as to question
the decree.   But she did neither.   I cannot but regard her

to explain such long-continued acquiescence.   See *Merrill* v. *Merrill*,
*123 Mass. 228.*

In *Charraud* v. *Charraud, 1 N. Y. Leg. Obs. 134,* a husband, who
entered into articles of separation, and gave his wife a mortgage to
secure her allowance, with knowledge of his wife's having previously
committed adultery, was held liable thereon.   See *Durant* v. *Durant, 1
Hagg. 733.*

In *Chew* v. *Chew, 38 Iowa 405,* cross-petitions for divorce were filed,
that of the wife for cruelty, that of the husband because his wife had
a former husband living.   By an agreement, both petitions were to be
dismissed and the husband was to convey certain lands to his wife.
He made the conveyance, but did not dismiss his petition, and
obtained a divorce on the ground alleged.—*Held,* that he could not
have the deed set aside, after the divorce, on the ground that his wife
had a former husband living when it was executed, because he then
knew that fact.

In *Wright* v. *Miller, 1 Sandf. Ch. 103, 8 N. Y. 10,* deeds were made to
defraud a wife in 1813, and in 1820, by articles of separation, an annuity
was given to the wife by the husband, which was regularly paid to her
until 1840.   In 1822 her husband obtained a divorce for her adultery.—
*Held,* that her annuity was not affected by the divorce.   Also, *Charles-
worth* v. *Holt, L. R. (9 Exch.) 38.*

Since the legal relation of husband and wife is not changed by
merely filing a libel for divorce, or by any other steps preliminary to
a decree (*Dwelly* v. *Dwelly, 46 Me. 377*), the marriage of the petitioner

Yorston *v.* Yorston.

conduct as such that, on principles of public policy, she ought not to be heard in this suit in opposition to the decree. For seven years she acquiesced in it and in the marriage which supervened upon it, and in those years three children have been born of that marriage, two of which are living. If the decree of divorce were set aside, the subsequent marriage would thus substantially be declared illegal, and the children thereof illegitimate. The complainant gives no good reason, and there appears to be none, for her long delay in seeking the aid of this court against the decree.

The defendant has been a resident of this state ever since his marriage with Mary Lewis, and the complainant admits that she has never complained to either of them of their intercourse, nor has she even made any application to the defendant for support. She must be adjudged to have acquiesced in the divorce and subsequent marriage. *Nichols* v. *Nichols, 10 C. E. Gr. 60 ; Singer* v. *Singer, 41 Barb. 139.* The conduct of the defendant towards the complainant is not defensible. He appears to have left her (making provision for her and her children, however), with a determination to get a divorce from her, and that, too, on

for a divorce on account of his wife's adultery, pending her appeal from a decree of divorce, deprives him of any benefit therefrom. *Stanford* v. *Stanford, 1 Edw. Ch. 317 ; Stephens* v. *Stephens, 51 Ind. 542 ; Coad* v. *Coad, 40 Wis. 392 ; Moors* v. *Moors, 121 Mass. 232 ; Meyar* v. *Meyar, 3 Metc. (Ky.) 298 ; Garner* v. *Garner, 38 Ind. 139 ; Galbreath* v. *Davidson, 25 Ark. 490 ; 2 Bish. § 751.*

An agreement between husband and wife, that one will not oppose or will discontinue a divorce applied for by the other, is void. *2 Bish. Mar. & Div. §§ 235–239.* Also, *Sampson* v. *Cresson, 6 Phila. 229 ; Kilborn* v. *Field, 78 Pa. St. 194 ; Van Order* v. *Van Order, 8 Hun 315 ; Chew* v. *Chew, 38 Iowa 405 ; Adams* v. *Adams, 25 Minn. 72 ; McCarthy* v. *McCarthy, 36 Conn. 177; Stilson* v. *Stilson, 46 Conn.* — See *McAllister* v. *McAllister, 10 Heisk. 345.*

In *Hoig* v. *Gordon, 17 Grant's Ch. 599,* for ten years a wife concealed from the public her relation to her husband, and allowed him to live with another woman as his wife, under an assumed name, the real wife living in the neighborhood and receiving from them her own support.—*Held,* that she was estopped to claim dower in lands bought and sold during those ten years, by her husband and his supposed wife, to a *bona fide* purchaser.—Rep.

grounds which, in view of his relations to the woman whom he subsequently married, were, morally, utterly insufficient. The complainant appears to have unwillingly acquiesced in his determination to repudiate her.   Were the controversy in its effects confined to them alone, her claim to relief would be subject to far less embarrassment than it now is. But she has, beyond all doubt, for years acquiesced in the divorce and marriage, and to grant to her the relief she asks would involve a decree against the validity of the divorce, and of the subsequent marriage, and consequently the legitimacy of the children of the marriage, and that, too, in a suit in which the decree and marriage are not directly assailed, and to which neither Mary Lewis nor her children are parties.

The bill will be dismissed.