KASWARA SZLAUZIS, Plaintiff in Error, *vs.* MACEJ SZLAUZIS, Defendant in Error.

*Opinion filed October 26, 1912.*

1. ILLEGAL CONTRACTS—*parties to an illegal contract who are in pari delicto are without remedy.* Parties to an illegal agreement who are *in pari delicto* are without remedy against each other so far as property rights are concerned, and the law will refuse to lend its aid to either of them.

2. SAME—*a void marriage may be annulled though parties are in pari delicto.* Where both parties to a proposed marriage know that the intended husband has not been divorced from his former wife for the period he is prohibited by statute from marrying again the marriage is void, and as the State is interested the marriage will be annulled even though the parties are *in pari delicto;* but their property rights will be left as the parties have made them.

3. SAME—*when parties to a void marriage are in pari delicto.* Where a man transfers to a woman, pending his divorce proceeding, a part of his property to gain her consent to marry him and conveys his real estate to induce her to keep her promise, and

they enter into the marriage relation at a time they both know it is prohibited by a statute which makes his act a felony, both parties are *in pari delicto,* notwithstanding the woman's motive in the whole transaction was to obtain the man's property and then rid herself of him.

FARMER and VICKERS, JJ., dissenting.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

JOHN O. WAGNER, and IGNATIUS BECKMAN, for plaintiff in error.

J. S. REYNOLDS, for defendant in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

Plaintiff in error filed her bill for divorce in the superior court of Cook county, to which defendant in error filed a cross-bill. Issues were joined on the second amended bill and the answer thereto and the cross-bill and the answer thereto. By her second amended bill the plaintiff in error asked that the marriage be dissolved upon two grounds: First, extreme and repeated cruelty; and second, for the reason that the marriage was void because it was celebrated within one year from the time the defendant in error was divorced from a former wife. Defendant in error by his answer to the bill denied the charges of cruelty and by his cross-bill prayed for divorce on the ground of adultery. The cross-bill, which was sworn to, also alleged that prior to the marriage with plaintiff in error he was seized of certain real estate in the city of Chicago of the value of $1000, (describing it,) and was the owner of a stock of goods and fixtures and household furniture of the value of about $1300; that plaintiff in error conceived the idea of defrauding and cheating him out of all his said property and in pursuance thereof consented to marry him; that she never intended to perform the duties and obligations of a

wife but consented to the marriage solely as a means to induce him to convey his property to her; that prior to the time the marriage was consummated she induced him to convey to her his stock of goods, and on the day the marriage was consummated she refused to marry him except on condition that he convey to her his said real estate, which he did, and that shortly prior to the time of the filing of her bill plaintiff in error and her paramour forcibly ejected him from their home. The superior court by its decree annulled the marriage and required plaintiff in error to re-convey to defendant in error all the personal and real estate which had theretofore been conveyed to her. This writ of error has been sued out to review that decree.

Plaintiff in error asks that the portion of the decree annulling the marriage be affirmed and that in all other respects it be reversed. To sustain her position she relies on the maxim, *in pari delicto, potior est conditio defendentis,* and contends that where parties have been guilty of mutual misconduct the law will relieve neither of them but will leave them where it finds them.

No certificate of evidence was preserved but the decree contains full findings of fact. By the decree the court found that prior to August 26, 1907, defendant in error, Macej Szlauzis, was a married man living separate and apart from his wife and was then prosecuting his bill for divorce in the circuit court of Cook county, and that he was then the owner of the real estate and personal property involved; that on that day, in response to her application, he employed the plaintiff in error, who was then a newly arrived immigrant, as his housekeeper, and that shortly after her employment she conceived a scheme to cheat and defraud him out of his property, enjoy it herself and then rid herself of him; that in pursuance of that scheme she simulated affection for him, and so worked upon him that on November 19, 1907, she procured him to transfer to her his stock of goods and fixtures without consideration;

that plaintiff in error knew Szlauzis was a married man and was then prosecuting his bill for divorce in the circuit court of Cook county, and as a part of her scheme to obtain his property without consideration she visited various persons connected with the divorce proceedings, including the solicitors employed by Szlauzis, and urged them to hasten the matter to a conclusion that she might contract a marriage with him; that on July 18, 1908, Szlauzis secured a decree for divorce from his wife; that during all this time plaintiff in error had resided with him in his home, in the city of Chicago, as his housekeeper and assisted him in the conduct of his business and had secured his confidence; that on July 31, 1908, plaintiff in error, in pursuance of her scheme to defraud him, procured Szlauzis to enter into a marriage with her, and on the same day, in furtherance of her scheme, procured him to convey to her, without consideration, his real estate in the city of Chicago. The decree then, with considerable detail, finds that immediately thereafter plaintiff in error took into their home one Baltranez, with whom she sustained illicit relations; that she procured Szlauzis to withdraw his savings from a loan association and erect a building on the said premises and procured him to execute a judgment note, without consideration, for $400, payable to Baltranez; that she appropriated all the proceeds from his mercantile business; that she applied to an attorney in the city of Chicago for advice as to what penalty would ensue if she were to cause or procure the death of Szlauzis; that she finally, with the aid of Baltranez, forcibly ejected him from his home; that in her original bill for divorce, which was sworn to, she alleged that Szlauzis was impotent on July 31, 1908, and had so remained until the filing of the original bill herein, on May 22, 1909, and that the marriage had therefore never been consummated, but that at the time she made oath to the facts alleged in the original bill touching the alleged impotency of Szlauzis she knew that such

allegations were false. The court further found that each step in these transactions was a part of the scheme which plaintiff in error had conceived to defraud Szlauzis out of his property.

The transfers of property to plaintiff in error were all made in contemplation of her marriage with defendant in error and in consideration of her entering into that relation with him. A part of the property was transferred to her while the divorce proceedings between defendant in error and his then wife were pending and while plaintiff in error was assisting him to bring this proceeding to a speedy conclusion. The divorce from his former wife having been procured on July 18, 1908, defendant in error was not competent, under the laws of this State, to enter into a marriage contract with plaintiff in error on July 31, 1908, and it was a felony for him to do so. Section 1a provides that in every case in which a divorce has been granted for any of the causes contained in section 1 of the act, neither party shall marry again, except with one another, within one year from the time the decree was granted, provided that when the cause is adultery the guilty party shall not be permitted to marry for a term of two years, and that every person marrying contrary to the provisions of that section shall be punished by imprisonment in the penitentiary for not less than one year nor more than three years, and said marriage shall be held absolutely void.

Conceding that the marriage was wrongful and the parties were *in delicto,* counsel for defendant in error contends that they were not *in pari delicto,* and that the moral turpitude of plaintiff in error being much the greater, equity should interpose to prevent her from profiting by the transaction. We are unable to agree with this view. While yet a married man defendant in error transferred a part of his property to plaintiff in error for the purpose of inducing her to consent to marry him when he should secure his decree for divorce. The real estate was conveyed to

her in order to induce her to keep this promise and to enter into a marriage contract with him at a time they both knew he could not legally marry anyone except his former wife, and that it was felony for him to do so. It is immaterial that plaintiff in error may have had some ulterior purpose at the time the property was conveyed to her and the marriage between her and defendant in error was celebrated. The consideration for the transfer of this property was the void marriage contract. The parties are *in pari delicto,* and the court must leave them, so far as their property rights are concerned, as it finds them. It is a general rule that where parties *in pari delicto* are concerned in illegal agreements they are left without remedy against each other, and the law will refuse to lend its aid to either of them but will leave them where it finds them, to suffer the consequences of their illegal acts. (*Kirkpatrick* v. *Clark,* 132 Ill. 342; *Goodrich* v. *Tenney,* 144 id. 422; *Crichfield* v. *Bermudez Paving Co.* 174 id. 466; *Perry* v. *United States School Furniture Co.* 232 id. 101.) If, as a consequence of his illegal act, defendant in error has suffered a wrong, he cannot look to the law for redress. Public policy will not permit him to make his own illegal act the foundation of a legal or equitable right. The rule of *par delictum* will not be applied, however, to prevent relief in a suit to annul and set aside a void marriage. That is a matter in which the State is an interested party. Under the facts as found by the court the marriage should be set aside as void, but the parties are entitled to no other or further relief.

The decree of the superior court is reversed and the cause remanded, with directions to dismiss the cross-bill for want of equity and to enter a decree on the bill of plaintiff in error annulling and setting aside the marriage as void.

*Reversed and remanded, with directions.*

FARMER and VICKERS, JJ., dissenting.