## SIMMONS v. SIMMONS.

Court of Appeals of District of Columbia.
Submitted April 6, 1927. Decided
May 2, 1927.

No. 4518.

1. Marriage ⬤═59—Marriage after divorce of one party fraudulently obtained held void, and subject to annulment, regardless of whether parties were in pari delicto or came with clean hands (Code, §§ 1283, 1284).

Marriage in District of Columbia, after divorce of one of parties fraudulently obtained in state of Virginia, *held* absolutely void, and subject to annulment in suit under Code, §§ 1283, 1284, regardless of whether parties were in pari delicto, or whether complaining party came with clean hands.

2. Marriage ⬤═59—In suit to annul void marriage, rule of pari delicto and principle of clean hands do not apply.

In proceedings to annul a void marriage, especially one so declared by statute, the rule of pari delicto and the equitable principle of clean hands are inapplicable, since in such cases the state becomes a third party.

3. Marriage ⬤═58(5)—Public policy prohibits sustaining of void marriage, contracted after divorce of one of parties fraudulently obtained.

A void marriage, contracted after divorce of one of parties fraudulently obtained, is against public policy, and cannot be sustained.

4. Divorce ⬤═329—Marriage after fraudulent divorce of one of parties in another state cannot be sustained on any principle of full faith and credit due divorce decree.

Marriage in District of Columbia, contracted after divorce of one of parties fraudulently obtained in the state of Virginia, will not be sustained on any principle of full faith and credit to be accorded the Virginia decree.

Appeal from Supreme Court of District of Columbia.

Action for divorce by Irene Simmons against Herbert Simmons, wherein defendant filed cross-bill for annulment of marriage. From a decree denying relief sought on cross-bill, defendant appeals. Reversed, and cause remanded, with directions.

T. L. Jeffords and E. C. Dutton, both of Washington, D. C., for appellant.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. Appellee, Irene Simmons, hereafter referred to as the plaintiff, brought a suit for absolute divorce in the Supreme Court of the District of Columbia against her alleged husband, Herbert Simmons, and a corespondent. Defendant husband answered the bill, and also filed a cross-bill, praying for an annulment of the marriage between himself and the plaintiff, on the ground that, when the marriage took place, plaintiff had a husband living, from whom she had not been legally divorced.

The case was heard on the cross-bill and answer thereto, and from the evidence it appeared that on March 7, 1918, plaintiff procured a decree of divorce on the ground of desertion from her then husband, Henry E. Davis, in the circuit court of Alexandria, Va., and on April 10 following married the defendant.

[1] The court below found from the evidence that the plaintiff and defendant were living together in the District of Columbia as husband and wife under the name of Simmons, although at the time it was known to defendant that the plaintiff was a married woman. It was while they were so living together that plaintiff filed her bill for divorce in the Virginia court, and procured the decree above mentioned. The court also found as a fact, and it is fully supported by the record, that the Virginia decree was procured by fraud, "both as to the required residence in Virginia of the plaintiff, and as to the alleged desertion of her husband." Indeed, it strongly appears that defendant furnished plaintiff with the money to carry on her suit in Virginia.

On this state of facts the learned trial justice below in his opinion concluded as follows: "To allow him, under these circumstances, to take advantage of the void decree of divorce obtained by Irene Davis in order to avoid the consequences of his mar-

riage to her, occurring about a month after the decree of divorce was entered, would be to lend the aid of the process and authority of this court to conduct that is violative of plain principles of equity and strike a blow at the integrity of the marriage relation."

In a case of this sort, neither the principles of equity nor the integrity of the marriage relation are controlling. We are here considering a case involving a marriage which is void ab initio. Section 1283, D. C. Code, provides in part as follows: "The following marriages are prohibited in the District of Columbia and shall be absolutely void ab initio, without being so decreed, and their nullity may be shown in any collateral proceedings, namely: * * *

"Third. The marriage of any persons either of whom has been previously married and whose previous marriage has not been terminated by death or a decree of divorce."

Section 1284 provides that:

"Any of such marriages may also be declared to have been null and void by judicial decree."

[2] In proceedings to annul a void marriage, especially where it is so declared by statute, the rule of pari delicto and the equitable principle of "clean hands" are inapplicable, since in such cases the state becomes a third party. While it is a settled principle of law that, where parties are in pari delicto, the court will refuse to extend them aid, and will leave them without remedy against each other, it is equally true that, where the state is an interested party, the contributing guilt of the parties to the suit will not operate as a bar to the granting of relief. "The rule of par delictum will not be applied, however, to prevent relief in a suit to annul and set aside a void marriage. This is a matter in which the state is an interested party. Under the facts as found by the court, the marriage should be set aside as void, but the parties are entitled to no other or further relief." Szlauzis v. Szlauzis, 255 Ill. 314, 99 N. E. 640, L. R. A. 1916C, 741, Ann. Cas. 1913D, 454.

In Lynch v. Lynch, 34 R. I. 261, 83 A. 83, it appeared that at the time of the marriage the wife, as here, had a husband living, from whom she had not been lawfully divorced. The court of original jurisdiction refused a divorce on the ground that the parties were in pari delicto, but the appellate tribunal, reversing the decree, said: "Her legal status, however, is something in which the state as well as the parties is interested. If, as a matter of fact, she was already married when she undertook to enter into the marriage with the respondent such second marriage was a nullity, and the court should so declare."

The interest of the state extends beyond the private grievances of the parties directly involved. It sponsors the welfare of society and the sanctity of the marriage relation. It refuses to countenance the continued perpetration of crime between such parties in violation of law and good morals. "In this class of cases it is not the private grievance of the complainant alone which is considered, and which controls the nature and extent of the remedy, if any, which may be granted. The state is often called a 'third party' to every suit for divorce or nullity of marriage. But not only the state is concerned, but the interests of innocent unborn children may be involved. If a decree of nullity is denied when nullity has been absolutely established by the proofs, the legality of the marriage is not established. * * * The fact that the marriage was null remains." Freda v. Bergman, 77 N. J. Eq. 46, 76 A. 460.

The equitable rule, that "he who comes into equity must come with clean hands," has no application, where its enforcement would result in sustaining an act declared by statute to be void, or against public policy. In such cases, the interest of society intervenes, and the state is regarded as a third party. In the case of Martin v. Martin, 54 W. Va. 301, 46 S. E. 120, 1 Ann. Cas. 612, the parties were prohibited from marrying in West Virginia because of relationship by blood. They went into Pennsylvania and were married. After they had lived together for 18 years, the husband brought a suit to annul the marriage, and the trial court dismissed his bill, on the ground "that a court of equity ought not to entertain a litigant who vaunted his own iniquity, and made that his sole grounds for the decree asked from it." The appellate court, reversing this decree, said: "If the parties could continue the marriage relationship without violating the criminal laws of the state, then the court might be justified in refusing to entertain the plaintiff's bill. But, when the law forbids the continuance of their marriage relation, notwithstanding its inception may have been a misdemeanor, it is the duty of both parties to make restitution by having the marriage annulled promptly. Their hands may be unclean, but it is the duty of a court of equity to permit them to clean them, when it can do so, and not permit such uncleanness to continue as a stench in the nostrils of the people. 19 Am. & En. Enc. Law (2d

Ed.) 1212; Com. v. Lane, 113 Mass. 458, 18 Am. Rep. 509; State v. Brown, 47 Ohio St. 102, 23 N. E. 747, 21 Am. St. Rep. 790; 16 Am. & En. Enc. Law (2d Ed.) 134. While the rule is that equity will not entertain persons with unclean hands, yet there are just exceptions thereto, and the statutes of this state on marriage and divorce have mercifully provided that those who unwittingly enter into marriage that leads to the continual violation of law, notwithstanding their original sin, may have such relation annulled, so that they may go and sin no more. Such transgressors should get from before the public gaze as quickly as possible."

In Heflinger v. Heflinger, 136 Va. 289, 118 S. E. 316, 32 A. L. R. 1088, in a suit for annulment on the ground that the marriage was null and void, because it was contracted in violation of a statute of the state, within six months from the date of the decree of divorce of the husband from a former wife, it was urged that plaintiff could not sustain his action under the equitable doctrine of "clean hands," and on the further ground that the parties were in pari delicto. The case involved a marriage, valid in Maryland, where it was contracted, but void by statute in Virginia, where the parties were domiciled. The court was confronted by the difficult question of conflict of laws, and the power of the Legislature of Virginia to give extraterritorial effect to a statute declaring such a marriage void.

The court, in an exceedingly able and instructive opinion, said: "The decree of annulment only ascertains that there had been no valid marriage between the parties, and obviates the necessity of ever thereafter being compelled to show its invalidity. If the complainant were acquiring any rights by virtue of his suit, other than the determination of his status in society, a different rule might apply, but he is acquiring none. McMullen v. Hoffman, 174 U. S. 639, 19 S. Ct. 839, 43 L. Ed. 1117. All he asks is to have judicially declared the fact that the marriage was a void marriage, and in this the public is interested. No property rights are affected, but the true status of the parties in society is ascertained and judicially declared. Under such circumstances, the doctrine of 'clean hands' does not debar either party from bringing a suit to have the void marriage declared a nullity. It is not a suit for divorce. There was no valid bond of matrimony to be dissolved." 

[3, 4] The decree below cannot be sustained upon the still broader ground of public policy. A void marriage will not be sustained on the theory of civil contract, since such a contract is void as against public policy. It will not be sustained in this instance on any principle of full faith and credit to be accorded the Virginia decree. If the action in Virginia was void, and against the law and public policy of the District of Columbia, the full faith and credit clause of the Constitution (Const. U. S. art. 4, § 1) has no application to such a judgment.

This question was at issue in the case of Andrews v. Andrews, 188 U. S. 14, 23 S. Ct. 237, 47 L. Ed. 366, where a husband left his matrimonial domicile in Massachusetts and went to South Dakota, and procured, with consent of his wife, a decree of divorce, void under the laws of Massachusetts, and returned to the state of Massachusetts, and there married, where he subsequently died, leaving property. The first wife asserted her rights as the lawful widow of the deceased. In upholding her contention, the court said: "The principle dominating the subject is that the marriage relation is so interwoven with public policy that the consent of the parties is impotent to dissolve it, contrary to the law of the domicile. The proposition relied upon, if maintained, would involve this contradiction in terms: That marriage may not be dissolved by the consent of the parties, but that they can, by their consent, accomplish the dissolution of the marriage tie, by appearing in a court foreign to their domicile and wholly wanting in jurisdiction, and may subsequently compel the courts of the domicile to give effect to such judgment despite the prohibitions of the law of the domicile and the rule of public policy by which it is enforced."

The case of Olverson v. Olverson, 54 App. D. C. 48, 293 F. 1015, has been called to our attention as being in conflict with the views herein expressed. That case has no bearing, even by analogy, on the case at bar. That was a suit for divorce under section 966 of the District Code. A decree was there sought for separation by the wife. The husband filed a cross-bill, asking absolute divorce on the ground that his wife had been divorced from a former husband in this District on the ground of adultery; that subsequently the parties were married in Maryland. The court refused the husband's plea on the ground that he was not in equity with "clean hands." This decree was affirmed by this court.

The marriage in Maryland was valid there, and the ground of divorce alleged by the defendant husband, had he been imposed upon by the plaintiff, was a valid ground for·

divorce under section 966 of the Code. The marriage was not null and void merely for the reason it could not lawfully have been solemnized in the District of Columbia. It logically followed that to annul it required a decree of a court of equity, which was the remedy sought in that case.

In the case at bar the action is brought under section 1283 of the District Code, which declares a marriage such as the present one absolutely void ab initio without any decree to that effect. The parties could ignore this marriage without any liability whatever to either party. The statute creates an absolute defense in either a direct or collateral proceeding for either party to the transaction, in any proceeding wherein the alleged marriage becomes an issue. In the present case, the decree in favor of the husband would amount to nothing more than a general decree in equity in his favor. The law declares such a marriage void, and the court is without power to validate it, or to in any respect require the parties to live together, or in any manner recognize the validity of the marriage. It is void by law, and the courts have no alternative when the matter is presented, either directly or collaterally, in any matter in which it becomes an issue, but to declare it so.

It follows, we think, that where it appears to the court that a marriage is an absolute nullity, the duty under the law of this District is to decree such a marriage void and prevent any further criminal union of the parties.

The decree is reversed, with costs, and the cause is remanded, with directions to enter a decree in conformity with this opinion.