16 So.2d 401

**JOHNSON v. JOHNSON.**

6 Div. 205.

Supreme Court of Alabama.
Jan. 13, 1944.

Hayden & Hayden, of Birmingham, for appellant.

Barber & Barber, of Birmingham, for appellee.

146

THOMAS, Justice.

Demurrer to a bill by a husband seeking annulment of his ceremonial marriage was sustained. Hence this appeal.

The grounds stated in the bill are that when the marriage was entered into, appellant had a living wife to whom he was ceremonially married, and from whom he had not been divorced. It is averred that his marriage with appellee was and is "wholly null and void."

The demurrer is to the effect that the bill is rested upon his "confessed and palpable violation of a law" which is denounced as a crime and that no right can be rested upon such act for which a criminal penalty is incurred. Gill Printing Co. v. Goodman, 224 Ala. 97, 139 So. 250, enforcement of an illegal contract of sale of stock; Montgomery, Supt. v. Wadsworth, 226 Ala. 667, 148 So. 419, 422, touching depositing public funds in a failing bank; 10 R.C.L. p. 389, § 139.

■ It is well insisted that though a man marries ever so often, he can have but one lawful wife living. So long as she is alive, and the marriage bond remains in full force, all his subsequent marriages, whether meretricious or founded on mistake, and at the time supposed to be lawful, are utterly null and void. Martin's Heirs v. Martin, 22 Ala. 86; Bell v. Tennessee Coal, Iron & R. Co., 240 Ala. 422, 199 So. 813; vol. 14 Alabama Digest, Marriage, ⊘11, p. 128.

■ Neither the "clean hands" rule nor that of "pari delicto" is applied in favor of the defendant in a suit to annul a void marriage. Szlauzis v. Szlauzis, 255 Ill. 314, 99 N.E. 640, L.R.A.1916C, 741, Ann. Cas.1913D, 454; Simmons v. Simmons, 57 App.D.C. 216, 19 F.2d 690, 54 A.L.R. 75;

Spyros v. Spyros, 142 Misc. 802, 254 N.Y.S. 811; Schouler Marriage and Divorce, 6th Ed., Vol. 2, § 1162, p. 1420; 35 Am. Jur., Marriage, Section 559.

The fitness and propriety of a judicial decision, pronouncing the nullity of a void marriage is apparent and equally conducive to good order and decorum and to the peace and conscience of the parties. Rawdon v. Rawdon, 28 Ala. 565; Hawkins v. Hawkins, 142 Ala. 571, 38 So. 640, 110 Am. St.Rep. 53; 38 C.J. 1347.

The case of Simmons v. Simmons, 57 App.D.C. 216, 19 F.2d 690, is made the subject of the text and notes in 54 A.L.R. 75. The third headnote is as follows: "In a proceeding to annul a marriage declared to be void by statute the rule of pari delicto and the equitable principle of clean hands are inapplicable, since the state becomes a party to the action."

At an early date in this jurisdiction Judge Stone said in Rawdon v. Rawdon, 28 Ala. 565, 567: "The authorities are also equally clear, that if a marriage contract be void, by reason of the insanity of one of the parties, the legal sequence is, that no decree of divorce is necessary to restore the parties to their original rights. —Ex parte Turney, 1 Ves. & Beames, 140. Yet we cordially approve the sentiment of the distinguished chancellor of New York, that 'the fitness and propriety of a judicial decision, pronouncing the nullity of such a marriage, is very apparent, and is equally conducive to good order and decorum, and to the peace and conscience of the party.'—Wightman v. Wightman, supra [4 Johns. Ch., N.Y., 343]; Crump v. Morgan, supra [3 Ired. Eq., N.C., 91, 40 Am.Dec. 447], where most of the authorities are ably collated."—[Brackets supplied.]

The great chancellor in Wightman v. Wightman, 4 Johns. Ch., N.Y., 343, held:

"So, where a marriage is unlawful and void ab initio, being contrary to the law of nature, as between persons ascendants or descendants in the lineal line of consanguinity, or between brothers and sisters, in the collateral line, this court will declare such a marriage, in a suit instituted for that purpose, null and void.

"Whether this court, there being no statute regulating marriages, or defining the prohibited degrees which render them unlawful, will go further and declare marriages void between persons in the other

degrees of collateral consanguinity or affinity,—quære."

In this jurisdiction this court has declared in Martin's Heirs and Adm'rs v. Martin, 22 Ala. 86, 101, that: " * * * Though a man marries never so often, he can have but one lawful wife living. So long as she is living and the marriage bond remains in full force, all his subsequent marriages, whether meretricious, or founded in mistake and at the time supposed to be lawful, are utterly null and void. No decree of divorce is necessary to annul such subsequent marriage, for it never had any legal existence. Such was clearly the common law. In Riddlesden v. Wogan, Cro. Eliz. 857, the plaintiff declared in debt on a bond. Defendant pleaded that she was, at the time of its execution, the wife of one Inglebert, who was then in life, et sic non est factum. Plaintiff replied that, after the bond was made, the defendant was divorced from said Inglebert by decree of a spiritual court, by reasons of his having another wife living at the same time of his marriage with defendant, and averred that such former wife was then living. To this replication there was a demurrer, but it was adjudged good by the court, because the decree of divorce was but declaratory. 'The subsequent marriage was merely void, and needed not any such sentence of divorce. It was void initio, and so she was always sole.' "

The same announcement, supported by many decisions, was made by this court in Bell v. Tennessee Coal, Iron & R. Co., 240 Ala. 422, 199 So. 813.

In Hawkins v. Hawkins, 142 Ala. 571, 574, 38 So. 640, 110 Am.St.Rep. 53, it is declared: " * * * This ceremony was had under the supposed authorization of a paper in form a marriage license, but which had no legal status as such; having been in part issued by the magistrate himself by filling in the names and date of a license form which had been signed in blank by the judge of probate. There has never been any cohabitation of the parties as man and wife, nor sexual intercourse since, or even before, the ceremony. Leaving out of view the duress, this was no marriage. The formal apparent solemnization was without license, and hence inefficacious as a statutory marriage. And the formal consent to be man and wife was not consummated into that relation under the common law [of the state] by co-habitation. Ashley v. State, 109 Ala. 48,. 19 So. 917."

In the case of Simmons v. Simmons, 57 App.D.C. 216, 19 F.2d 690, 691, 54 A.L.R. 75, the facts were that appellee Irene Simmons, brought a suit for absolute divorce in the supreme court of the District of Columbia against her alleged husband Herbert Simmons, and a corespondent. The husband answered the bill and filed a cross bill, praying for annulment of the marriage between himself and the plaintiff (wife), on the ground that when the marriage took place, plaintiff had a living husband from whom she had not been legally divorced. The court said in its opinion as follows:

"In proceedings to annul a void marriage, especially where it is so declared by statute, the rule of pari delicto and the equitable principle of 'clean hands' are inapplicable, since in such cases the state becomes a third party. * * * 'The rule of pari delictum will not be applied, however, to prevent relief in a suit to annul and set aside a void marriage. That is a matter in which the state is an interested party. Under the facts as found by the court, the marriage should be set aside as void, but the parties are entitled to no other or further relief.' Szlauzis v. Szlauzis, 255 Ill. 314, 99 N.E. 640, L.R.A.1916C,. 741, Ann.Cas.1913D, 454.

"In Lynch v. Lynch, 34 R.I. 261, 83 A. 83, it appeared that at the time of the marriage the wife, as here, had a husband living, from whom she had not been lawfully divorced. The court of original jurisdiction refused a divorce on the ground that the parties were in pari delicto, but the appellate tribunal, reversing the decree,. said: 'Her legal status, however, is something in which the state as well as the parties is interested. If, as a matter of fact,. she was already married when she undertook to enter into the marriage state with the respondent such second marriage was a nullity, and the court should so declare.'

"The interest of the state extends beyond the private grievances of the parties directly involved. It sponsors the welfare of society and the sanctity of the marriage relation. It refuses to countenance the continued perpetration of crime between such parties in violation of law and good morals. 'In this class of cases it is not the private grievance of the complainant alone which is considered, and which con-

trols the nature and extent of the remedy, if any, which may be granted. The state is often called a "third party" to every suit for divorce or nullity of marriage. But not only the state is concerned, but the interests of innocent unborn children may be involved. If a decree of nullity is denied when nullity has been absolutely established by the proofs, the legality of the marriage is not established. * * * The fact that the marriage was null remains.' Freda v. Bergman, 77 N.J.Eq. 46, 76 A. 460.

"The equitable rule, that 'he who comes into equity must come with clean hands,' has no application, where its enforcement would result in sustaining an act declared by statute to be void, or against public policy. In such cases, the interest of society intervenes, and the state is regarded as a third party. In the case of Martin v. Martin, 54 W.Va. 301, 46 S.E. 120, 1 Ann. Cas. 612, the parties were prohibited from marrying in West Virginia because of relationship by blood. They went into Pennsylvania and were married. * * * The appellate court, reversing this decree, said: 'If the parties could continue the marriage relationship without violating the criminal laws of the state, then the court might be justified in refusing to entertain the plaintiff's bill. But, when the law forbids the continuance of their marriage relation, notwithstanding its inception may have been a misdemeanor, it is the duty of both parties to make restitution by having the marriage annulled promptly. Their hands may be unclean, but it is the duty of a court of equity to permit them to clean them, when it can do so, and not permit such uncleanness to continue as a stench in the nostrils of the people. 19 Am. & Eng. Enc. Law (2d Ed.) 1212; Com. v. Lane, 113 Mass. 458, 18 Am.Rep. 509; State v. Brown, 47 Ohio St. 102, 23 N.E. 747, 21 Am.St.Rep. 790; [8 Am.Crim.Rep. 373]; 16 Am. & Eng. Enc. Law, 2d Ed. 134. * * *

"In Heflinger v. Heflinger, 136 Va. 289, 118 S.E. 316, 32 A.L.R. 1088, in a suit for annulment on the ground that the marriage was null and void, because it was contracted in violation of a statute of the state, within six months from the date of the decree of divorce of the husband from a former wife, it was urged that plaintiff could not sustain his action under the

equitable doctrine of 'clean hands,' and on the further ground that the parties were in pari delicto. * * *

"The court, in an exceedingly able and instructive opinion, said: 'The decree of annulment only ascertains that there had been no valid marriage between the parties, and obviates the necessity of ever thereafter being compelled to show its invalidity. If the complainant were acquiring any rights by virtue of his suit, other than the determination of his status in society, a different rule might apply, but he is acquiring none. McMullen v. Hoffman, 174 U.S. 639, 19 S.Ct. 839, 43 L.Ed. 1117. All he asks is to have judicially declared the fact that the marriage was a void marriage, and in this the public is interested. * * *

"The decree below cannot be sustained upon the still broader ground of public policy. A void marriage will not be sustained on the theory of civil contract, since such a contract is void as against public policy. It will not be sustained in this instance on any principle of full faith and credit to be accorded the Virginia decree. If the action in Virginia was void, and against the law and public policy of the District of Columbia, the full faith and credit clause of the Constitution (Const. U. S. art. 4, § 1) has no application to such a judgment."

A recent collection of the authorities on this important subject is contained in 35 Am.Juris. p. 173 under the title of "Marriage," and § 57 thereof, pp. 219, 220, entitled "Necessity of Annulment; Right of Adjudication of Invalidity", citing our case of Hawkins v. Hawkins, 142 Ala. 571, 38 So. 640, 110 Am.St.Rep. 53, reads, in part, as follows: "A marriage void in its inception does not require the sentence, decree, or judgment of any court to restore the parties to their original rights or to make the marriage void, even where the statute makes provision for such annulment, but for the sake of the good order of society and for the peace of mind of all persons concerned, it is generally expedient that the nullity of the marriage should be ascertained and declared by the decree of a court of competent jurisdiction. Another reason why a judicial determination of such a marriage ought to be sanctioned is that an opportunity should be given, when the evidence is obtainable and the parties

living, to have the proof of the invalidity of such marriage presented in the form of a judicial record, so that it cannot be disputed or denied. * * *"

In L.R.A.1916C, 707 the case of Goset v. Goset, Adm'r, etc., of John Goset, 112 Ark. 47, 164 S.W. 759, is reported, holding to the effect that, "A marriage by a woman having another husband living and undivorced is void, and not voidable, under a statute providing that no subsequent or second marriage shall be contracted by any person during the lifetime of any former husband undivorced." And at page 711 of the same volume of L.R.A., the general rule is stated to be: "At common law and in the absence of statutory provision having a modifying effect, a civil disability, such as having a lawful living husband or wife by a former marriage, renders a subsequent marriage absolutely void ab initio, in consequence of which it is good for no legal purpose, no decree of nullity is necessary to the existence of the original rights of the parties, and its invalidity can be maintained in any proceeding either before or after the death of the parties and irrespective of whether the question arises directly or collaterally." There are copious notes from other jurisdictions and our case of Martin's Heirs v. Martin, 22 Ala. 86, is cited.

There are many authorities collected to the effect that "A bigamous marriage is expressly declared by legislative enactment to be illegal and void from the beginning," and a suit to void such a marriage can be brought at any time by either party. Stierlen v. Stierlen, 6 Cal.App. 420, 92 P. 329.

 We hold the true rule as announced by the great Chancellor Kent, adopted by the eminent Chief Justice Stone and obtaining through the years, to be that to preserve the good order of society and to keep the peace of mind of all persons concerned, the nullity of a void marriage should be ascertained and declared on due application while the facts are available, by a decree of a court of competent jurisdiction.

The decree of the circuit court being contrary to this view in sustaining the demurrer, is reversed, and the cause is remanded.

Reversed and remanded.

All the Justices concur.