27 So.2d 10

### FAGGARD v. FILIPOWICH.

#### I Div. 246.

Supreme Court of Alabama.

July 25, 1946.

Graham H. Sullivan and T. T. Shepard, both of Mobile, for appellee.

Doris Van Aller, of Mobile, for appellant.

LAWSON, Justice.

Noah Levert Faggard, Jr., a minor, filed this bill by his mother, Mrs. Gertrude Faggard, as next friend, to annul his marriage to the respondent, Kathleen Filipowich. The appeal is by complainant from a decree of the Circuit Court of Mobile Coun-

184

ty, sitting in Equity, denying relief and dismissing the bill.

The bill alleges in substance: That Noah Levert Faggard, Jr., is eighteen years of age and a resident of Mobile County; that the respondent, Kathleen Filipowich, is a married woman over eighteen years of age and a resident of Mobile County; that on or about April 10, 1945, a marriage ceremony was performed and entered into between the said Noah Levert Faggard, Jr., and respondent at Mobile, Alabama, at which time the respondent represented her name to be Kathleen Anderson, an unmarried woman; but, that at the time of the said wedding ceremony on April 10, 1945, the respondent was in fact a married woman and her correct name was Kathleen Filipowich, the wife of one Alexander Michael Filipowich; that Noah Faggard, Jr., has refused to cohabit with the respondent and to be bound by said marriage ceremony performed on April 10, 1945.

The bill prays for a decree annulling the said marriage ceremony and for general relief.

Respondent did not demur to the bill but interposed the following answer: "Comes the respondent and for answer to the bill of complaint filed against her alleges that she was formerly married to a man by the name of Alexander Michael Filipowich but that she later learned that he was never divorced for (sic) his former wife and when she married Noah Levert Faggard, Jr., she was a single woman and had a perfect right to marry said complainant. Respondent alleges that her husband, the complainant, lived with her until the date that this bill of annulment was filed against her."

■ In the recent case of Johnson v. Johnson, 245 Ala. 145, 16 So.2d 401, 405, we held: "To preserve the good order of society and to keep the peace of mind of all persons concerned, the nullity of a void marriage should be ascertained and declared on due application while the facts are available, by a decree of a court of competent jurisdiction." To like effect is the decision in Moffitt v. Moffitt, 246 Ala. 174, 19 So.2d 722. The fact that Faggard at the time he entered into the marriage ceremony with respondent had been informed by the latter of her previous matrimonial venture with Filipowich does not deprive him of the right to have a court of equity determine his marital status with respondent. "Neither the 'clean hands' rule nor that of 'pari delicto' is applied in favor of the defendant in a suit to annul a void marriage." Johnson v. Johnson, supra.

■ It appears that the parties to this suit were married in accordance with the laws of Alabama; it will be presumed, therefore, that such marriage is valid, and complainant seeking to annul it has the burden of proving its invalidity. Pittman v. Pittman, 246 Ala. 163, 19 So.2d 723.

■ Under the decisions of this court, one attacking the invalidity of a marriage does not meet the burden imposed on him by merely showing that one of the parties to the alleged marriage was previously married. In Sloss-Sheffield Steel & Iron Co. v. Alexander, 241 Ala. 476, 3 So.2d 46, 48, it is said: "The presumption that a marriage is legal and valid in all respects is one of the strongest known to the law, and while it is true that the marriage relation when once proven is presumed to continue, yet this presumption attaches with full force to the latest marriage, the reason being that the presumption of innocence, morality and legitimacy will counterbalance and preponderate against the presumption of the former relations." The burden is on one attacking the invalidity of the second marriage not only to establish the fact of the previous marriage but that such previous marriage has not been dissolved by divorce or death. Sloss-Sheffield Steel & Iron Co. v. Watford, 245 Ala. 425, 17 So.2d 166; Freed v. Sallade, 245 Ala. 505, 17 So.2d 868; Sloss-Sheffield Steel & Iron Co. v. Alexander, supra; Bell v. Tennessee Coal, Iron & R. Co., 240 Ala. 422, 199 So. 813; Ex parte McLondon, 239 Ala. 564, 195 So. 733; Walker v. Walker, 218 Ala. 16, 117 So. 472; Ex parte Young, 211 Ala. 508, 101 So. 51.

The decree of the trial court denying relief and dismissing the bill does not state the reason or reasons for the court's action. However, in view of the pleadings,

the testimony and the position which both parties to this appeal have taken, we think it reasonable to assume that relief was not denied on the ground that the evidence did not show that respondent's first marriage had not been dissolved by death or divorce, but was based on a finding by the court that respondent was not legally married to Filipowich in that at the time he entered into the marriage ceremony he had a living wife from whom he was not divorced. Hence, the respondent's alleged marriage to Filipowich was no impediment to her marriage to complainant.

In some jurisdictions the presumption indulged in favor of the second marriage has been extended to the point of requiring the person attacking the validity of the second marriage not only to prove the former marriage and that it has not been dissolved by death or divorce, but also to prove that the parties to the former marriage were legally competent to contract marriage. United States v. Green, C.C., 98 F. 63; In re Biersack, 96 Misc. 161, 159 N.Y.S. 519; Johannessen v. Johannessen, 70 Misc. 361, 128 N.Y.S. 892; Price et al. v. Tompkins et al., Sup., 171 N.Y.S. 844; Keller v. Linsenmyer, 101 N.J.Eq. 664, 139 A. 33; Routledge v. Githens, 118 Or. 70, 245 P. 1072, 45 A.L.R. 922; In re DeForce's Estate, 119 Or. 556, 249 P. 632, 633.

However, we do not think that the rule announced in the cases cited above should have application in this case. Here the respondent entered into a marriage ceremony in Mobile County in January, 1944, with one Alexander Filipowich, under a license duly issued by the Probate Judge of that county. She lived with Filipowich as his wife for nearly a year and bore his son. She left him, according to her testimony, when she was told that at the time he entered into the marriage ceremony with her he had a living wife from whom he was not divorced. She took no steps to have her marital status determined by judicial decree, but entered into the marriage ceremony with complainant after having been advised by an attorney that she was not the legal wife of Filipowich and was free to marry without the necessity of a judicial decree. The advice of the attorney seems to have been based solely on representations made to him by defendant, her mother and sister, as to what they had been told about Filipowich having been previously married.

Complainant and respondent, under license duly issued, went through a ceremonial marriage in Mobile County in April, 1945, about fifteen months after respondent had gone through a marriage ceremony with Filipowich, and within less than six months after she separated from the latter. No children have been born to complainant and respondent. In fact they have lived together as man and wife only a very short length of time. Immediately after the marriage ceremony they lived together for two days. Complainant then entered the Navy and while he was away he wrote to respondent frequently. He returned to Mobile on leave after only a few weeks absence and spent one night with respondent. Shortly after his return to Mobile this proceeding was instituted and Faggard left for overseas duty and was on such duty at the time of the trial of this case. He has not corresponded with respondent since he last left Mobile.

As before pointed out, no children have been born to Faggard and respondent, but respondent does have a child by Filipowich. That child is presumed to be legitimate and we do not think that the presumption in favor of the validity of the second marriage should be extended to the point of overcoming not only the presumption of the continuance of respondent's first marriage but also the legitimacy of her son by Filipowich. We are of the opinion that the burden of proving the invalidity of her marriage to Filipowich must rest upon respondent. This conclusion is in accord with former decisions of this court. Ex parte Young, supra; Pittman v. Pittman, supra.

In Pittman v. Pittman, supra, Lois Pittman, the appellant, filed a bill seeking the annulment of her marriage to Emory H. Pittman, appellee, on the ground that at the time she entered into the marriage ceremony with Emory he had a living wife from whom he was not divorced. The bill of complaint was not answered but decree pro confesso taken on motion by

publication. The only evidence offered by Lois Pittman was that going to show a former marriage of Emory to one Alma Grimsley and that such marriage had not been dissolved by death or divorce. There was no evidence offered to show the legal capacity of Emory and Alma Grimsley to enter into the marriage contract at the time they were married. The trial court denied relief on the ground of the uncertain nature of the evidence, and because the certificate of the former marriage was not properly authenticated. On appeal to this court we concluded that the trial court would have granted relief if he had found that the certificate of the former marriage had been properly authenticated and proceeded not only to reverse the trial court but here to render a decree granting relief and annulling the marriage. As before pointed out, complainant made no effort to prove that Alma and Emory were free to contract marriage, yet we rendered a decree of annulment. While the decision in the case of Pittman v. Pittman, supra, does not discuss the question, it has the effect of holding that the burden is not upon one attacking the validity of the second marriage to prove that the parties to the first marriage were legally capable of entering into the marriage contract.

█ Counsel for respondent (appellee) in brief here filed says as follows: "There is but one question vital to the correct solution of this cause and that is whether or not Alexander Michael Filipowich was lawfully married to Helen Filipowich at the time he went through a marriage ceremony with Kathleen Anderson, the respondent in this cause. If he was so married, the second marriage to this respondent not only was void but constituted a criminal offense under the laws of Alabama." It appears from the above quotation that respondent (appellee) makes no contention that the evidence does not show the marriage of respondent to Filipowich nor that it does not show that the said marriage had not been dissolved by death or divorce. Therefore, under the decision of this court in Ex parte Young, supra, the marriage of respondent to Filipowich is to be considered as being presumptively valid and the burden rests upon respond-

ent to show that it was invalid by virtue of the fact that at the time of the marriage ceremony Filipowich had been previously married.

We turn, therefore, to a consideration of the evidence tending to show the former marriage of Filipowich. There was no record evidence offered to prove the alleged former marriage of Filipowich, nor was such marriage sought to be established by eye-witnesses thereto. The only testimony in the record relating to such former marriage was that given by respondent, her sister Juanita, and her mother, Mrs. Maggie Anderson.

It appears that after respondent and Filipowich went through the marriage ceremony they lived in Mobile for about three weeks and then moved to New York, where Filipowich had formerly lived and where respondent remained until October, 1944. In October of 1944, or shortly thereafter, a son was born to respondent. Juanita, the sister of respondent, went to New York approximately one week before the birth of the child and respondent's mother arrived in New York some time after the child was born. All three of these witnesses testified that while they were in New York they were told by Alexander Filipowich himself, his mother, father and sister that Alexander was a married man at the time he entered into the marriage ceremony with respondent. Respondent and her sister, Juanita, testified that they met a woman who represented herself to be Helen Filipowich, the wife of Alexander, and that Alexander admitted in their presence and in the presence of the woman Helen that she was his wife and the mother of his daughter.

After respondent and Filipowich moved to New York they lived with the latter's parents for several months, the exact length of time we are not able to definitely ascertain due to seemingly conflicting statements of respondent. In any event the couple lived with Alexander's parents for a considerable length of time and nothing was said to her by Alexander or any member of his family relative to his former marriage. But respondent says she heard about the former marriage, at a time not

exactly shown, in this manner: "A lady stopped me on the street; she came up to me and asked if I was Mr. Filipowich's wife, and I said yes, and she said, have you met his first wife, and that is the first I knew of it, and then I went and asked his mother, and she told me that he was. She said, 'Yes, he was, but you have never asked me and I just never had mentioned it,' and she said she had not wanted to worry me in my condition." The identity of the woman who volunteered this information to respondent is not divulged by the record. According to some portions of respondent's testimony, she immediately left the home of Alexander's parents and moved into a place of her own and never lived with Filipowich thereafter, but from other parts of her testimony it would appear that she and Alexander moved out of the home of his parents because of the approaching birth of their child. Respondent says that upon learning of Alexander's prior marriage she wrote for her sister or mother to come up to be with her at the birth of her child. She testified positively that her sister came up before the birth of the child and was with her on an occasion when Alexander, his alleged wife Helen, and members of Alexander's family came to where she was living and there stated that the woman Helen was Alexander's wife from whom he was not divorced. Respondent stated that on that occasion the woman Helen and Alexander both admitted that Helen was the lawful wife of Alexander. All of this, according to respondent, transpired before the birth of her child and in the presence of her sister, Juanita. In answer to the question, "How come you to separate from him (Alexander)," respondent replied, "Because I found out that he had been married and did not have a divorce from his first wife." She was then asked, "How did you find that out?" She answered, "I just found out because lots of friends around there told me." The identity of these friends is not shown unless they were the woman she met on the street or were the members of Alexander's family.

Respondent's sister, Juanita, testified that she arrived in New York about a week before the birth of the child and on an afternoon while respondent was in the hospital she, Juanita, saw a woman and a child standing near a fruit stand on a street in New York and that she was impressed with the resemblance of the child to Alexander Filipowich. Witness proceeded to a show and later returned to the home of some member of the Filipowich family. We cannot determine whether it was the home of Alexander or that of his parents or sister, in view of the apparent conflict in the testimony. But perhaps the place is not material. When witness reached the abode of some member of the Filipowich family, she saw the woman and child whom she had previously seen on the street. Alexander, his parents and his sister were present. According to the witness, the strange woman was introduced to her as Helen Filipowich, the wife of Alexander, and the young girl as their daughter. Helen, it seems, was upset over learning of Alexander's marriage to Kathleen, although she had been living right around the corner from the Filipowich family during the time that Alexander and the respondent were living there as man and wife. A scene ensued and the parents of Alexander tried to appease Helen. Juanita testified that on that occasion all of the Filipowich family, including Alexander, told witness that the woman Helen was Alexander's wife from whom he was not divorced and that Helen admitted the relationship. This all transpired while Kathleen, the respondent, was in the hospital and even though Kathleen had testified that she learned of Alexander's former marriage before she went to the hospital and that her sister, Juanita, was present on one occasion when the Filipowich family told Kathleen about that marriage, this witness, Juanita, testified that the Filipowich family pleaded with her not to tell Kathleen about the former marriage for at least a week, and that she never did tell Kathleen about it. According to the testimony of this witness, respondent did not know about the alleged former marriage of Alexander at the time she sent for witness and her mother to come to New York. Juanita further testified that all of the neighbors knew that Alexander had been

married before he married Kathleen but did not know whether or not he had been divorced. However, they looked upon Alexander and Kathleen as man and wife. The identity of the neighbors is not disclosed.

Mrs. Maggie Anderson, mother of respondent, testified that after Juanita returned from New York she went up to bring respondent home; that while she was in New York she was told by Alexander and by his mother and father that Alexander had a living wife from whom he was not divorced at the time he married respondent.

■ The doctrine which prevails in this state is that marriage, like any other fact involved in a judicial inquiry, may be proved by circumstances—direct and positive proof of the fact is not necessary. Bynon v. State, 117 Ala. 80, 23 So. 640, 67 Am.St.Rep. 163. Proof by an eye-witness is not required, nor is it indispensable that the license with the return of the person officiating thereon should be produced. Cohabitation, reputation, the acknowledgment of the parties themselves, and reception as man and wife by their relations may be sufficient proof of the fact or at least raise a presumption that a marriage took place until the contrary is shown. Martin's Heirs and Admr's v. Martin, 22 Ala. 86; Ford v. Ford, 4 Ala. 142; Moore v. Heineke, 119 Ala. 627, 24 So. 374. But proof of such fact must be made in accordance with the rules that obtain.

In this case the evidence tending to show the former marriage of Alexander Filipowich consists entirely of statements alleged to have been made by other parties to respondent, her sister and her mother. There is no testimony from these witnesses tending to show cohabitation of Alexander Filipowich and the woman Helen, nor is there any evidence going to show that they held themselves out to the world as such. On the contrary, the evidence tends to show that the woman Helen did not use the name Filipowich and that the family of Alexander had not even seen her for a number of years prior to the time of the alleged meeting in the home of the Filipowiches.

■■ It is insisted that respondent and the witnesses called in her behalf could legally testify that Alexander Filipowich told them he had been previously married on the theory that such statement was an admission or confession. It is true that we have held that declarations by a party to a suit that he had been married is competent evidence against him. Williams v. State, 54 Ala. 131, 136, 25 Am.Rep. 665; Buchanan v. State, 55 Ala. 154; Green et al. v. State, 59 Ala. 68; Langtry v. State, 30 Ala. 536; Parker v. State, 77 Ala. 47, 54 Am.Rep. 43; Fuquay v. State, 217 Ala. 4, 114 So. 898. But Alexander Filipowich is not a party to this suit and hence the declarations which he is alleged to have made relative to his former marriage are not admissible under the rule announced in the cases last above cited.

■ In view of the fact that Alexander Filipowich and the woman Helen were not parties to this suit and were not living together as man and wife at the time they are supposed to have admitted their former marriage, such declarations are hearsay and are not admissible under the exceptions to the rule excluding hearsay testimony. In Moore v. Heineke, supra [119 Ala. 627, 24 So. 379] it was said: "The declarations and conduct of the cohabiting parties, while living together, are admissible as of the res gestae. But such declarations made by one of the parties after they have permanently separated and ceased to live together, in a suit in which such party is no way interested, are mere hearsay, and are not admissible under any of the exceptions to the rule excluding such testimony. Of consequence, the testimony of Spreadbury and Bolan as to the declarations of the alleged first wife, made after Gleason had ceased to live with her, and not in his presence, should have been excluded."

■ The declarations attributed to the mother, father and sister of Alexander are not legal evidence of his alleged former marriage. Hearsay evidence is admissible to prove pedigree, and this term includes not only questions of descent and relationship, but also the particular facts of birth, marriage and death, and the times when

these events may have happened. But declarations of third persons cannot be admitted to prove pedigree unless it is shown that they are deceased. No such showing was made in this case. White v. Strother, 11 Ala. 720; Cherry v. State, 68 Ala. 29; Landers v. Hayes, 196 Ala. 533, 72 So. 106; Rogers, pro ami. v. DeBardeleben Coal & Iron Co., 97 Ala. 154, 12 So. 81; Elder v. State, 123 Ala. 35, 26 So. 213; Chambers v. Morris, 159 Ala. 606, 48 So. 687; Palmer v. State, 165 Ala. 129, 51 So. 358.

We have given careful consideration to all of the evidence tending to show the former marriage of Alexander Filipowich and are clear to the conclusion that there was no legal evidence introduced to show such a relationship. All of the evidence in this regard is subject to the vice that it is hearsay.

As before pointed out, both parties to this appeal attribute the trial court's action in refusing the relief prayed for and in dismissing the bill to a finding by that court from the evidence presented that Alexander Filipowich was married at the time he entered into the marriage ceremony with respondent.

Since we do not think there was any legal evidence to support such a conclusion, we feel that the ends of justice will best be met by remanding this cause so that the parties may have an opportunity to present such legal evidence as is available to them that this unfortunate situation may be finally clarified.

Reversed and remanded.

All the Justices concur.